# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LUPE G. SANCHEZ, | ) |
|         Plaintiff, | ) ) ) |
| v. | )   No. 07-CV-79-SAJ |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration,[1/] | ) ) ) ) ) ) |
|         Defendant. | ) |

## **OPINION AND ORDER**[2/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Lupe G. Sanchez, ("Plaintiff") appeals the decision of the Commissioner denying her disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff alleges that the ALJ erred by 1) relying upon vocational expert testimony that conflicts with the Dictionary of Occupational Titles and (2), by rejecting the statement of a physician's assistant. For the reasons discussed below, the Court hereby affirms the Commissioner's decision.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on September 29, 1962, and was 43 years old at the time of the ALJ's decision. (*E.g.* R. 56, 147.) She completed high school and has past work experience as a press technician, assembly line worker, packager and babysitter. (R. 23, 71-72, 75, 80-92, 438-39, 454.) She alleges that she became disabled on July 9, 2003,

---

[1/] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Commissioner of Social Security, is substituted for Jo Anne B. Barnhart the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of § 42 U.S.C. § 405(g) of the Social Security Act.

[2/] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

due to "surgery on both shoulders." (R. 56, 70-71.)  She later claimed that she had difficulty concentrating, was forgetful, felt depressed, and had pain in her lower back and right leg. (R. 106, 431-32.)

Plaintiff filed her applications for supplemental security income and disability insurance benefits on April 13, 2004 and April 19, 2004, respectively.[3/]  (R. 4, 56-58.)  After she was denied benefits at the initial and reconsideration levels, she filed a timely Request for Hearing.  Administrative Law Judge ("ALJ") Richard Say held a hearing on January 12, 2006 (*see* R. 423-70),[4/] and issued an unfavorable decision on May 12, 2006. (R. 19-25.) Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied her request on December 5, 2006. (R. 5-7.)  Plaintiff now seeks judicial review.

## II. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims.  *See* 20 C.F.R. §§ 404.1520, 416.920.  Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; . . . .

42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A).  A claimant is disabled under the Social Security Act only if his

---

[3/]  Plaintiff protectively filed on March 12, 2004. (R. 4, 55, 77.)

[4/]  An earlier hearing held in Colorado on February 10, 2005, before the Honorable James Olson was continued.  (R. 471-74.)

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy, . . . .

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).[5/]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206

---

[5/] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. See *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750.

"The finding of the Secretary[6] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750. This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### III. ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found, among other things, that Plaintiff had the following severe impairments: status post bilateral impingement syndrome; status post arthroscopy of the right shoulder; status post arthroscopy of the left shoulder x 2; and degenerative disc disease. (R. 21.) Nonetheless, the ALJ determined that Plaintiff did not have impairment or combination of impairments that met or medically equaled one of the listed impairments

---

[6] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ's residual functional capacity ("RFC") assessment was as follows:  Plaintiff could lift no more than 10 pounds and occasionally stoop, crouch, and balance; Plaintiff could not work around unprotected heights or dangerous moving machinery, nor could she perform overhead reaching, but she could frequently reach in any other direction; and Plaintiff must also avoid concentrated exposure to vibration. (R. 22.)  The ALJ decided that Plaintiff was unable to perform her past relevant work, but, considering her age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that she could perform. (R. 24.)  Accordingly, the ALJ concluded that Plaintiff had not been under a "disability" as defined in the Social Security Act, from July 9, 2003 through the date of the ALJ's decision. (R. 24-25.)

## IV.  REVIEW

### A.  Vocational Expert Testimony

Plaintiff challenges the ALJ's reliance on the opinion of the vocational expert as to other jobs in the national economy that Plaintiff could perform.  In particular, she alleges that part of the vocational expert's testimony conflicted with the Dictionary of Occupational Titles ("DOT"), and that the ALJ failed to inquire as to that conflict or explain how he resolved it.  The hearing transcript shows that the ALJ posed a hypothetical question to the vocational expert that was based, in part, upon findings that Plaintiff could not perform overhead reaching but could occasionally reach in any other direction.  (R. 455.)  In response, the vocational expert stated that Plaintiff could perform two unskilled jobs at the sedentary level: order clerk and information clerk.  (R. 456.)   She indicated that many

unskilled, sedentary jobs require frequent reaching, but these two could be performed with an occasional reaching restriction. (R. 456-57.)

When Plaintiff's attorney questioned the vocational expert about how the DOT classified the two jobs, she acknowledged that they both generally require frequent reaching, but she maintained that approximately 50 percent of the jobs in those categories could be performed with the occasional reaching restriction. (R. 458-67.) During the attorney's questioning, the ALJ asked the vocational expert whether someone with the RFC described by the ALJ could perform the order clerk job if he changed the reaching restriction to "no overhead reaching but *frequent* reaching in other directions," and the vocational expert responded affirmatively. (R. 464.) (emphasis added.) The ALJ then set forth his RFC assessment in his opinion to include frequent reaching instead of occasional reaching. (R. 22.) He also set forth the vocational expert's testimony as to the reduced number of jobs the Plaintiff could perform, given her RFC limitations, and stated that her testimony was consistent with the information contained in the Dictionary of Occupational Titles. (R. 24.)

Social Security Ruling ("SSR") 00-4p requires an ALJ to identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by a vocational experts ("VE") or vocational specialist ("VS") and information in the Dictionary of Occupational Titles.[7/]  *Policy Interpretation Ruling: Titles I and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and other Reliable Occupational Information*

---

[7/] Although Social Security rulings do not carry the force of law, they are generally entitled to deference because "they constitute the Social Security Administration's interpretations of its own regulations and the statute which it administers." *Walker v. Sec'y of Health & Human Servs.*, 943 F.2d 1257, 1259-60 (10th Cir. 1991).

*in Disability Decisions*, SSR 00-4p, 2000 WL 1898704 (S.S.A.)  In addition, the ALJ must explain in the determination or decision how any conflict that has been identified was resolved.  *Id.* at *1.  Specifically, the ruling requires:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT.  In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

*Id.* at *4.

The Tenth Circuit has indicated that SSR 00-04p essentially codified *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir.1999) in this respect.  *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005.)  The *Hackett* court relied on SSR 00-4p and *Haddock* in holding that the district court erred in finding unnecessary a "reasonable explanation" from the VE where there was a conflict between the VE's testimony and the DOT.  *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005.)   The ruling also provides:

> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled.  The adjudicator will explain in the determination or decision how he or she resolved the conflict.  The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

*Id.* at *4.

The ALJ in this case did not "inquire, on the record," as to whether the vocational evidence provided by the vocational expert was consistent with the occupational information supplied by the DOT.  *See* SSR 00-4p at *2.  Instead, the attorney inquired.

7

The vocational expert responded by explaining that the two positions could be performed by someone who was limited to occasional reaching if a particular work site or a smaller company did not require the order clerk or information clerk to frequently reach. She reduced the number of jobs available for each position accordingly.

Since the attorney inquired about the conflict and obtained a reasonable explanation for the inconsistency, the ALJ's failure to explicitly inquire or obtain a reasonable explanation was harmless error,[8] especially since the ALJ essentially resolved the conflict and explained the resolution of it in his opinion. He resolved the conflict by changing the RFC assessment from one that included an occasional reaching limitation to one that include a frequent reaching limitation, and by indicating his acceptance of the VE's testimony that Plaintiff's limitation reduced number of jobs by 50 percent. The ALJ did not err by relying upon the VE's testimony in this matter.

**B.      Physician's Assistant Evidence**

Nor did the ALJ err by rejecting the statement of a physician's assistant. Plaintiff's job prior to 2003 involved extensive pushing and pulling as well as overhead work. (R. 124.) Attempts at physical therapy failed to alleviate her bilateral shoulder pain. (*Id.*) Tests revealed a torn rotator cuff and an impingement in her right shoulder, and she had surgery on August 18, 2003, to address those problems. (R. 208-09.) Similarly, tests later revealed an impingement in her left shoulder and she had surgery on February 27, 2004, to address that problem. (R. 401-02.) Nonetheless, attempts at physical therapy and an

---

[8]   *See Massachi v. Astrue*, 486 F.3d 1149, *1154 n. 19 (9th Cir. 2007) (noting that an ALJ's failure to inquire about the conflict or obtain a reasonable explanation for the conflict could be considered harmless, "were there no conflict, or if the vocational expert had provided sufficient support for her conclusion so as to justify any potential conflicts.")

Case 4:07-cv-00079-saj   Document 23   Filed in USDC ND/OK on 02/29/08   Page 9 of 12

injection failed to alleviate Plaintiff's problems with her left shoulder. (*See* R. 293-94, 399.) An MRI revealed a rotator cuff tear in the left shoulder (R. 285-86), and, on February 17, 2005, Plaintiff had a second surgery to repair that shoulder (R. 389-90.)  Plaintiff then moved to Oklahoma.

On January 9, 2006, Sarah Schmidt, P.A., completed a Medical Source Statement in which she indicated that Plaintiff could only infrequently sit, stand, and walk. The form defined "infrequently" to mean from zero to one hour a day. (R. 422.)  In Schmidt's opinion, Plaintiff could occasionally (defined as two to three hours a day) use her arms for reaching, pushing, and pulling and use her hands for grasping, handling, fingering, or feeling. (*Id.*) Schmidt cited Plaintiff's shoulder pain and fatigue as the cause of Plaintiff's limitations. (*Id.*) Under the heading asking for medical findings to support her assessment, Schmidt stated that Plaintiff had an inability to work due to back arthritis, pain, and depression. (*Id.*)

Plaintiff argues that the ALJ "completely rejected" Schmidt's opinion merely because she was not an 'acceptable medical source." Pl. Br., Dkt. # 19, at 8 (citing R. 23.)  Further, Plaintiff maintains that Schmidt's opinion is consistent with the February 3, 2005 findings of Kelly Sanderford, M.D., who treated Plaintiff in Colorado. *Id.* at 8-9.  Such rejection, Plaintiff argues, is against 20 C.F.R. § 1513 and SSR 06-03p. *Id.* at 9.

Under the applicable regulations, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech-language pathologists. *Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims*, SSR 06-03p, 2006 WL 2329939 at *1 (S.S.A.); *see* 20 C.F.R. §§ 404.1513(a), 416.913(a).  Acceptable medical sources provide evidence to establish the existence of

a medically determinable impairment; and only acceptable medical sources can give the Commissioner a medical opinion or be considered treating sources whose medical opinions may be entitled to controlling weight.  *Id.* at *2 (citing 20 C.F.R. §§ 404.1513(a), 416.913(a), 404.1527(a)(2), 416.927(a)(2), 404.1502, 416.902, 404.1527(d), and  416.927(d)).  By contrast, opinions and evidence from "other sources" such as physician's assistants and therapists cannot establish the existence of a medically determinable impairment but "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function"   *Id.*   The ALJ must consider evidence from other sources when evaluating an acceptable medical source's opinion by application of the following factors:

> • How long the source has known and how frequently the source has seen the individual;
> • How consistent the opinion is with other evidence;
> • The degree to which the source presents relevant evidence to support an opinion;
> • How well the source explains the opinion;
> • Whether the source has a specialty or area of expertise related to the individual's impairment(s); and
> • Any other factors that tend to support or refute the opinion.

*Id.* at *4-*5. The ruling emphasizes that "[n]ot every factor for weighing opinion evidence will apply in every case."  *Id.* at *5.

The record shows that none of Plaintiff's numerous physicians who examined or treated Plaintiff ever diagnosed or established the Plaintiff had arthritis, walking limitations, or depression.  (*See* R. 157, 169, 216, 290, 360, 378-79, 371, 392-94, 420.)  Further, Plaintiff's physical therapists also indicated that Plaintiff's range of motion, degree of restrictions, and pain levels improved significantly after the surgeries to her shoulders. (*See* R. 205, 251, 359.)  Schmidt's opinion provides a striking contrast to these reports, and is

not consistent, as Plaintiff asserts, with the February 3, 2005 findings of Kelly Sanderford, M.D., who treated Plaintiff in Colorado.

Dr. Sanderford did indicate that Plaintiff's maximum ability to lift and carry on an occasional or frequent basis was less than 10 lbs. and that her ability to reach, push and pull were affected by her shoulder impairments, but his opinion was given ***before*** the second surgery to Plaintiff's left shoulder on February 17, 2005.  (*See* R. 393-94.)  Even at that time, Dr. Sanderford placed no limit on Plaintiff's ability to stand, sit or walk, and he stated his hope that, "after healing, she won't have to miss any [work].  (R.  392, 394.)  After the surgery, Doug Magnuson, M.D., saw Plaintiff when she complained of leg and lower back pain after sitting for prolonged periods.  He reported that she had normal muscle strength and reflexes in her legs. (R. 360.)  He concluded that her back pain was not neurological and that she could treat it with a stretching program. (R. 361.)

The ALJ discussed the medical record as well as plaintiff's testimony.  He specifically discussed Schmidt's statement but rejected it because Plaintiff "has not alleged disability due to depression and has not sought treatment with a mental health professional for depression." (R. 23.)  He also stated that he gave "no weight to Ms. Schmidt's opinion as she is not an acceptable medical source and her statement is not supported by other evidence in the record." (*Id.*)  The ALJ adequately explained the weight he gave to Schmidt's opinion.  The Court finds no error in this regard.

## V.  CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits follows the correct legal principles and is supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.

It is so ordered this 29th day of February, 2008.

Sam A. Joyner
United States Magistrate Judge